UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH JENNINGS,                      :
                                     :
          Plaintiff                  :        No. 4:CV-03-2408
                                     :
     vs.                             :        (Complaint Filed 12/30/03)
                                     :
FEDERAL BUREAU OF PRISONS,           :        (Judge Muir)
et al.,                              :
                                     :
          Defendants                 :

## MEMORANDUM AND ORDER

September 2, 2005

## Background

On December 30, 2003, Plaintiff, Keith Jennings, an inmate presently confined in the Allenwood United States Penitentiary, White Deer, Pennsylvania, ("USP-Allenwood"), filed the above captioned action pursuant to the Federal Tort Claims Act ("FTCA"), Bivens vs. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), 42 U.S.C. §§ 1983, 1985 et seq., and Pennsylvania state law.  He alleges that defendants retaliated against him for filing a Federal Tort Action against United States Marshals in the United States District Court for the Northern District of

New York[1] by restricting his telephone privileges.  He names as defendants, the United States;  the Federal Bureau of Prisons ("BOP); BOP Director Harvey Lappins; Assistant U.S. Attorney John Katko; Assistant U.S. Attorney Charles Roberts; Former Warden Jake Mendez;  Warden Michael V. Pugh;  Special Investigative Agent J. Feeney; BOP Regional Director M.E. Ray; and Unit Manager Noone.

By Order dated February 12, 2004, this action was dismissed, without prejudice, for plaintiff's failure to pay the filing fee.  (Doc. No. 9).  On February 18, 2004, plaintiff filed a motion for reconsideration of the Court's February 12, 2004, Order. (Doc. No. 10). On March 8, 2004, plaintiff's motion for reconsideration was granted and his case was reopened.  (Doc. No. 12).  By Order dated March 17, 2004, the Court dismissed plaintiff's FTCA claims against the individual defendants and the Federal Bureau of Prisons, dismissed the respondeat superior

---

1. On January 4, 2001, plaintiff served the United States Marshals Service with an administrative tort claim in the amount of $2,500,000,66 (sic) for personal injury arising out of an alleged assault by two Deputy U.S. Marshals on January 4, 2000, after having been ordered out of the courtroom by the judge presiding over his action.  (Doc. No. 47, Ex. A). Plaintiff's administrative tort claim was never adjudicated. Id.

claims contained in Count VII of the complaint, and directed that plaintiff's action be served on the defendants.  (Doc. No. 17).

On July 23, 2004, Jennings filed an amended complaint in which he sought to add the Director of the United States Marshals Service and unknown U.S. Marshals as defendants to his action. (Doc. No. 28).  He also sought to add new claims regarding these defendants. Id.

On December 2, 2004, defendants filed a motion to dismiss the claims raised in plaintiff's original complaint and his amended complaint. (Doc. No. 42). On February 22, 2005, Jennings filed a motion to voluntarily dismiss his amended complaint and only proceed on those claims, and against those defendants, named in his original complaint. (Doc. No. 53). The Court will grant this motion.

Presently before the Court is defendants' motion to dismiss plaintiff's original complaint.  This motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant the defendants' motion to dismiss.

**<u>Statement of Facts</u>**[2]

On March 17, 1999, Jennings was convicted of the following: (1) engaging as a supervisor or manager in a continuing criminal enterprise (CCE), in violation of 18 U.S.C. §§ 841(a)(1), 846 and 853; (2) multiple counts of conspiring to distribute and possession with intent to distribute cocaine, cocaine base and marijuana in violation of 18 U.S.C. § 841(a)(1); and (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 841(a)(1); and (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).   (Doc. No. 4 Affidavit of John M. Katko, Assistant United States Attorney, attached as exhibit).  Defendant, John Katko, was the Assistant United States Attorney for the Northern District of New York, who prosecuted Jennings.  <u>Id</u>.

After Jennings was convicted, and while he was awaiting sentencing, defendant Katko was advised by members of the United States Marshals Service and other federal agents that Jennings had repeatedly threatened to kill Katko.  <u>Id</u>. The United States

---

2.  The statement of factual background is derived from the complaint and the numerous documents submitted in support of the complaint. (Doc Nos. 1,4).

4

Attorney's Office also received information that Jennings had made plans to escape. Based on these threats, the United States Marshals Service arranged for Jennings to be transferred from the Onondaga Count Justice Center in Syracuse, pending sentencing, to the Federal Correctional Institution, Ray Brook, New York, a more secure facility. Id.

On March 20, 2000, Jennings was sentenced to life imprisonment. Id. He was then committed to the custody of the Bureau or Prisons.

By Memorandum dated February 12, 2001, Jennings was notified by Special Investigative Agent, J. Feeney, that his telephone usage was limited to one telephone call per day. (Doc. No. 4, Exhibit 1).  On February 13, 2001, Jennings submitted an Informal Resolution Form with his Unit Manager, challenging the limited usage of the telephone and "requesting a copy of the date and time that this miss used (sic) telephone conversation take place, also a copy of the receiving party with a coy of [plaintiff's] phone list." (Doc. No. 4, Ex. 2).  Plaintiff's unit manager responded that:

> "the Special Investigative Agent informed you of the reason why you were placed on limited telephone privileges.  This is a result of you using the

5

> telephone to further criminal activity. You may
> present any documentation on your behalf to the SIA for
> further review of your current telephone restriction."

(Doc. No. 4, Ex. 2).

On February 14, 2001, plaintiff filed a Request for Administrative Remedy with the Warden, challenging the telephone restriction. (Doc. No. 4, Ex. 3). In a response dated March 8, 2001, Warden Mendez informed Jennings of the following:

> "Due to the fact you used the telephone or phone like
> communicating devices to conduct narcotic trafficking
> extensively in the commission of your offense, you have
> been placed on a telephone monitoring status. On
> February 17, 2001, you received a memorandum stating
> you are authorized to conduct one telephone call per
> day.
>
> This decision is based on information obtained through
> your Presentence Investigation and not a review of a
> pre-recorded telephone conversation conducted within
> the United States Penitentiary (USP), Allenwood.
> Therefore, your request to receive a copy, date and
> time of the specific conversation where you misused the
> telephone is not maintained by staff at USP-Allenwood.
> With respect to your request for a copy of your
> telephone list, you may contact your Unit Counselor and
> request his through use of an Inmate Request to Staff
> Member Form, 'Cop-Out'.
>
> Accordingly, your Request for Administrative Remedy has
> been denied. If you are not satisfied with this
> response, you may appeal to the Regional Director
> within 20 calendar days of this response."

(Doc. No. 4, Ex. 4).

6

On March 11, 2001, Jennings filed a Regional Administrative Remedy Appeal to the Regional Director.  (Doc. No. 4, Ex. 5). In a response dated April 11, 2001, the Regional Director denied Jennings' appeal, finding that:

> Program Statement 5264.07, <u>Telephone Regulations for Inmates</u>, and the implementing regulation at 28 C.F.R. § 540.100, authorize the Warden to make those limitations to inmates telephone use as "are necessary to ensure the security or good order, including discipline, of the institution or to protect the public." The Program Statement also provides that "the Warden shall permit an inmate who has not been restricted from telephone use as the result of a specific institutional disciplinary sanction to make at least one telephone call each month."  Records indicate your current offense is Continuing Criminal Enterprise, Possession with Intent to Distribute Cocaine and Cocaine Base and Money Laundering.  Your records further reveal you conducted financial transactions by means of wire transfers and used wire communications to conceal the trafficking of drugs.  Based on this type of offense, you have been appropriately limited to one social telephone call per day.  Ths limitation assists staff in maintaining the security and good order of the institution and to protect the public.
>
> A review of the notification memorandum you received from the SIA revealed the wording on the notification is inaccurate.  The Warden properly advised you that the telephone limitation was a result of your current offense and information obtained in your Pre-sentence Investigative report, not as a result of prison telephone abuse.  You will receive the correct notification regarding your telephone limitation. Accordingly, your appeal is denied.

(Doc. No. 4, Ex. 7).

7

On April 19, 2001, Jennings filed a Central Office Administrative Remedy Appeal to the General Counsel. (Doc. No. 4, Ex. 8). In a response dated June 19, 2001, Jennings' appeal was denied. (Doc. No. 4, Ex. 9).

Jennings then attempted a second challenge to the telephone restriction, claiming that the restriction was unlawful because it was issued by a Special Investigative Agent and that according to 28 C.F.R. § 546.100, the Warden is the only authority to suspend/restrict telephone privileges. (Doc. No. 4, Exs. 10-12). In a June 22, 2001, response to his Request for Administrative Remedy, Warden Mendez, upheld the restriction, but granted plaintiff's Request for Administrative Remedy, in part, to the extent that the only authority to suspend/restrict an inmate's telephone use is the Warden. (Doc. No. 4, Ex. 13). Thus, Jennings' Request for Administrative Remedy was granted to the extent that a new memo was to be issued to reflect the Warden's authorization to restrict Jennings' telephone privileges. Id. On June 21, 2002, the Warden issued a memorandum limiting Jennings' telephone use to 120 minutes per month. (Doc. No. 4, Ex. 14).

8

On October 25, 2002, Jennings again attempted to challenge the telephone restriction, claiming that it was based on a 1999 Memorandum that stated that plaintiff made three way phone calls to make threats against an Assistant United States Attorney while incarcerated at the Onondaga County Justice, Center, Syracuse, New York.  (Doc. No. 4, Ex. 22).  On November 1, 2002, Jennings' Unit Manager responded to Jennings that there was "no disclosure information in [his] central file pertaining to [his] making a 3 way telephone call to make threats against a AUSA." (Doc. No. 4, Ex. 22).

On November 1, 2002, plaintiff filed a Request for Administrative Remedy, seeking to have the 1999 Memorandum removed from his file, and his telephone privileges reinstated. (Doc. No. 4, Ex. 24).  Finding justification for the phone restriction, independent of the 1999 Memorandum, plaintiff's Request for Administrative Remedy and appeals of same were denied.  (Doc. No. 4, Exs.  25, 27).

On August 22, 2003, Jennings filed an Request for Administrative Remedy, claiming that the issuance of the 1999 Memorandum is a "conspiracy to retaliate against [him] without due process or a disciplinary report filed in support of

9

accusations that [he] threatened assistant U.S. Attorney (Katko).  (Doc. No. 4, Ex. 45).

In a response dated September 17, 2003, Warden Pugh denied Jennings' Request for Administrative Remedy, finding that:

> A memorandum dated July 21, 1999, indicates that you used a three-way telephone call to make threats to the Assistant United States Attorney who prosecuted your case.  The United States Marshals Service has requested that you have limited telephone usage and that all calls be closely monitored.   The United States Attorneys Office, Northern District of New York was contacted and verified the above information to be accurate.  Although no formal disciplinary action was taken, you were transferred to the Federal Correctional Institution in Ray Brook, New York, for security reasons and to protect the Assistant United States Attorney who prosecuted your case.   Therefore, no evidence exists that staff conspired to retaliate against you.

(Doc. No. 4, Ex. 46).

On September 20, 2003, Jennings filed a Regional Administrative Remedy Appeal with the Regional Director, challenging the Warden's denial of his Administrative Remedy. (Doc. No. 4, Ex. 47).  In a response dated October 29, 2003, Jennings' appeal was denied.  The Regional Director found no evidence of retaliation or conspiracy, as there was no indication that the information received was erroneous and, that

the Bureau has broad discretion to consider information in making classification decisions.  (Doc. No. 4, Ex. 48).

On December 30, 2003, Jennings filed the instant action pursuant to the Federal Tort Claims Act ("FTCA"); Bivens vs. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971); 42 U.S.C. §§ 1983, 1985 et seq. and Pennsylvania state law. He seeks compensatory and punitive damages for defendants' negligent and conspiratorial acts of depriving him of his constitutional rights, by limiting his telephone privileges.  (Doc. No. 1).

**Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. <u>See</u> In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997). All material allegations of the complaint must be accepted by the Court as true and construed in favor of the plaintiff.  Allah vs. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000); Shaev vs. Saper, 320 F.3d 373, 375 (3d Cir. 2003). Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would

11

entitle him to relief.  Conley vs. Gibson, 355 U.S. 41, 45-46 (1957); Lum vs. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004).  However, the Court is not required to accept legal conclusions, either alleged or inferred, from the pleaded facts. Morse vs. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  In Nami vs. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on failure to state a claim, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  When an unrepresented party is confronted by a motion to dismiss, the deciding court must be mindful of the well-settled principle that *pro se* complaints should be liberally construed, Haines vs. Kerner, 404 U.S. 519, 520 (1972), and that *pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston vs. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson

12

vs. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002);

<u>see also</u> Estelle vs. Gamble, 429 U.S. 97, 107-108 (1976).

With these principles in mind the Court will address the defendants' motion to dismiss.

**<u>Discussion</u>**

A.  <u>Restricted Telephone Privileges</u>

In accordance with BOP Program Statement 5264.07, <u>Telephone Regulations for Inmates</u>, codified at 28 C.F.R. § 540.100(a):

> The Bureau of Prisons extends telephone privileges to inmates as part of its overall correctional management. Telephone privileges are a supplemental means of maintaining community and family ties that will contribute to an inmate's personal development. An inmate may request to call a person of his or her choice outside the institution on a telephone provided for that purpose. However, limitations and conditions may be imposed upon an inmate's telephone privileges to ensure that these are consistent with other aspects of the Bureau's correctional management responsibilities. In addition to the procedures set forth in this subpart, inmate telephone use is subject to those limitations which the Warden determines are necessary to ensure the security or good order, including discipline, of the institution or to protect the public. Restrictions on inmate telephone use may also be imposed as a disciplinary sanction (see 28 CFR part 541).

The only frequency requirement indicated by this regulation is that an inmate who has not been restricted from telephone use due to a discipline infraction be permitted " to make at least

13

one telephone call <u>each</u> <u>month</u>."  28 C.F.R. § 540.100(b)(emphasis added).

The regulations also specify a Warden may not apply a frequency limitation on the number of calls an inmate may place to his attorney.  However, the inmate must demonstrate other means of communication with their attorney, i.e., correspondence or visiting, are inadequate.  <u>See</u> 28 C.F.R. § 540.103.  In these cases, the inmate must demonstrate a pressing legal need or court deadline in order to receive an unmonitored "legal call."  Nevertheless, "inmate telephone use is subject to those limitations which the Warden determines are necessary to ensure the security or good order, including discipline, of the institution or to protect the public."  28 C.F.R. § 540.100.  Because restriction of an inmate's use of telephones is wholly within the discretion of BOP officials, Jennings' has no liberty interest in having telephone privileges.  <u>See, e.g.</u>, Valdez vs. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002); Benzel vs. Grammar, 869 F.2d 1105, 1108(8th Cir.), <u>cert denied</u>, 493 U.S. 895 (1989)(an inmate "has no right to unlimited telephone use").

Even if a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is

14

nonetheless "reasonably related to legitimate penolgical interests." Turner vs. Safley, 482 U.S. 78, 89 (1987).  In the instant case, Jennings' telephone use was limited due to the fact that he conducted financial transactions by means of wire transfers and used wire communications to conceal the trafficking of drugs and that he used a three-way telephone call to make threats to the Assistant United States Attorney who prosecuted his case.  Thus, limiting Jennings' telephone privileges was clearly reasonably related to legitimate penological interests and, consequently, does not violate his constitutional rights.

Moreover, the restriction placed upon Jennings' telephone privileges was wholly in accordance with BOP policy, which permits an inmate's access to the telephone to be restricted if necessary to ensure the institution's safety, security, or good order, or to protect the public.  Furthermore, plaintiff was only restricted to one call per day, which is more than consistent with 28 C.F.R. § 540.100(b), which permits the Warden to limit an inmate who has not been restricted from telephone use due to a discipline infraction be permitted " to make at least one telephone call each month."   28 C.F.R. §

15

540.100(b)(emphasis added). Finally, Jennings can show no prejudice from the Warden's limitation on his telephone use. An agency must comply with its own regulations, but a person aggrieved by its failure to do so must at least show prejudice. Lee Moi Chong. vs. INS, 264 F.3d 378, 390 (3d Cir. 2001). Here, plaintiff cannot show any prejudice from the telephone restriction. For instance, Plaintiff has not shown that his phone limitation has caused him any interference with his access to the courts. See Lewis vs. Casey, 518 U.S. 343, 349 (1996)(holding that an inmate alleging that a prison violated his right to access the courts must show actual prejudice). Thus, the plaintiff has not suffered a constitutional violation as a result of the restriction, and the defendants' motion to dismiss will be granted.

B. Retaliation

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser vs. Horn, 241 F.3d 330, 333 (2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id.

16

(quoting Allah vs. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied upon showing that "the action 'was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Id. (quoting Allah, 229 F.3d at 225). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Id. (quoting Mount Healthy Bd. of Educ. vs. Doyle, 429 U.S. 274, 287 (1977). Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Id. at 334.

Jennings alleges that as a result of his filing a January 4, 2001, administrative tort claim against the U.S. Marshals Service, the named defendants in this action retaliated against him by restricting his telephone privileges. (Doc. No. 1 at p. 4).

Because Jennings cannot demonstrate that "his constitutionally protected conduct was 'a substantial or

motivating factor' in the decision to discipline him," the Court will assume the first two elements arguendo and will proceed directly to the causation element.

Jennings' proof of causation depends solely on the close temporal proximity between the filing of his administrative tort claim and the limitation on his telephone privileges.  Indeed, temporal proximity can be evidence of causation.  See Rauser, 241 F.3d at 334.  Plaintiff's telephone privileges were limited on February 12, 2001, more than one month after serving the U.S. Marshals service with his tort claim. Such proximity, at best, is tenuous to prove that the filing of the tort claim was a motivating factor in defendants' restricting plaintiff's telephone privileges.

Moreover, the Court has already found that a legitimate penological reason existed for restricting plaintiff's telephone privileges. Jennings' conducted financial transactions by means of wire transfers and used wire communications to conceal the trafficking of drugs and he used a three-way telephone call to make threats to the Assistant United States Attorney who prosecuted his case. Thus, the complaint, and its many exhibits attached thereto, are devoid of any evidence that draw into

18

question the propriety or sincerity of defendants' determination to restrict Jennings' telephone privileges.   Thus, even if Jennings could prove causation, the voluminous documentation in support of his complaint establish that defendants' "would have taken the same disciplinary action even in the absence of the protected activity."   <u>Rauser</u>, 241 F.3d at 333.   Thus, defendants' motion to dismiss will be granted.

### C.   FTCA Claim

The FTCA provides a cause of action against the United States for common law torts. 28 U.S.C. § 2674. It establishes that the United States, except in limited circumstances, can be held liable for negligence to the same extent as a private individual. Id.; United States vs. Muniz, 374 U.S. 150, 153 (1963). Included among cognizable claims under the FTCA are claims by federal prisoners if they receive injuries by reason of negligence of government employees. 28 U.S.C. § 1346(b); Muniz, 374 U.S. at 150. Here, plaintiff does not state a cause of action under the FTCA because the asserted prison regulation and program statement do not create a legal right enforceable in

an action for damages, and Jennings provides no other substantive, viable source for his FTCA claim.[3]

The regulation at issue here, 28 C.F.R. § 540.100, relates to the institutional management of the Bureau of Prisons.  On its face, it does not provide for a private right of action and there is no indication that Congress intended it to create an implied private right of action.  See Bonano vs. East Caribbean Airline Corp., 365 F.3d 81, 84 (1st Cir. 2004)("[A] regulation, on its own, cannot create a private right of action.").  See also, 18 U.S.C. §§ 4001, 4042.  Jennings' putative constitutional tort claims are also not actionable under the FTCA, and he has failed to plead and prove a source of

_____

3. The Court notes that even if plaintiff had pled a cause of action under the FTCA, he has failed to exhaust his administrative remedies prior to bringing suit in the district court.  Under the FTCA, the district court's jurisdiction does not take effect until there has been compliance with the administrative claims provision of the FTCA. McNeil vs. United States, 508 U.S. 106 (1993); Deutsch vs. United States, 67 F.3d 1080, 1091 (3d Cir. 1995). No where in the instant action does plaintiff assert that he has exhausted his administrative remedies. Because the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies, and there is no evidence of record that such administrative exhaustion has occurred, there exists an alternative ground for granting defendant's motion to dismiss.

substantive liability under state tort law.  F.D.I.C. vs. Meyer, 510 U.S. 471, 477-78 (1994).  Defendants' motion to dismiss will be granted.

D.  Jennings' 42 U.S.C. §§ 1985, 1986 claims

1. Section 1985

Jennings' complaint alleges that, in addition to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, his action arises under 42 U.S.C. §§ 1985, 1986.  Section 1985(1) creates a cause of action against those who conspire to prevent officials from performing their duties.  Section 1985(2) creates a cause of action against those who conspire to obstruct justice, intimidate a party, witness or jurors to a suit.  Section 1985(3) creates a cause of action against those who conspire deprive persons of their rights or liberties.  The court assumes that Jennings' claim is brought under § 1985(3).

In order to establish a § 1985(3) violation, the plaintiff must prove the following five elements:

        1) A conspiracy;
        2) motivated by racial or perhaps otherwise class-based
        invidious discrimination;
        3) for the purpose of depriving either directly or
        indirectly, any person or class of persons of equal
        protection of the laws, or equal privileges and
        immunities under the laws;

21

    4) an act in furtherance of the conspiracy;  and
    5) that the plaintiff was injured in his person or
    property or was deprived of having and exercising any
    right or privilege of a citizen of the United States.

Griffin vs. Breckenridge, 403 U.S. 88, 102-03 (1971); Hudson vs.

Thornburgh, 770 F.Supp. 1030 (W.D.Pa. Aug. 12, 1991).

     A claim for conspiracy under the under § 1985(3) must show

that the alleged conspirators did in fact violate the

constitutional rights of the plaintiff.  Dells, Inc. vs. Mundt,

400 F.Supp. 1293, 1298 (S.D.N.Y.1975).   The court has already

indicated that Jennings has failed to state a violation of his

constitutional rights as a consequence of his telephone

restriction.   As such, Jennings has failed to establish the

third prong of the Supreme Court's test.  His complaint fails to

establish a required element of an action brought pursuant to 42

U.S.C. § 1985.   Accordingly, defendants' motion to dismiss will

be granted on this claim.

     2. § 1986

     Liability under 42 U.S.C. § 1986, which provides a cause of

action for neglect to prevent conspiracy to interfere with a

person's civil rights, is derivative of liability under 42

U.S.C. § 1985(3);  without violation of the latter, there can be

22

no violation of the former.  Grimes vs. Smith, 776 F.2d 1359 (7th Cir.1985); Trerice vs. Pedersen, 769 F.2d 1398 (9th Cir.1985); Rogin vs. Bensalem Township, 616 F.2d 680 (3d Cir.1980), <u>cert denied</u>, 450 U.S. 1029 (1981); Rourke vs. United States, 744 F.Supp. 100 (E.D.Pa.1988).  As such, the court will grant defendants' motion to dismiss this claim.

E.  <u>State law claims</u>

To the extent that plaintiff seeks to raise state law claims of negligence or intentional infliction of emotional distress, the court declines to exercise supplemental jurisdiction over the pendent state law claims.  28 U.S.C. § 1367(c)(3).  Those claims will be dismissed to any right Jennings may have to purse them in state court.  In so holding, we express no opinion as to the merits of any such claims.

An appropriate order will issue.


s/Malcolm Muir

_____

MUIR
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


KEITH JENNINGS,                     :
                                    :
          Plaintiff                 :        No. 4:CV-03-2408
                                    :
     vs.                            :        (Complaint Filed 12/30/03)
                                    :
FEDERAL BUREAU OF PRISONS,          :        (Judge Muir)
et al.,                             :
                                    :
          Defendants                :

### ORDER

September 2, 2005

For the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.   The plaintiff's motion to dismiss his amended complaint (Doc. No. 53) is **GRANTED.**  The claims raised in the plaintiff's amended complaint (Doc. No. 28) and the defendants named therein are dismissed from this action.

2.   Defendants' motion to dismiss plaintiff's action (Doc. No. 41) is **GRANTED.**

3.   The Clerk of Court shall **CLOSE** this case.

4.   Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

s/Malcolm Muir
_____
MUIR
United States District Judge